Please be seated. Good morning everyone. We have three cases on the argument calendar today, one on submission. I've been advised that everyone is present for the argument, so we'll dispense with the calling of the calendar. As you know, with respect to the court's COVID protocols, when the attorneys are arguing, you can take off the mask if you wish, it's up to you. But once you're done arguing, obviously you should put it back on. All right, so we'll proceed with the first case on the calendar, United States v. Shkreli. Good morning, Your Honors. Good morning. May it please the from Gibson, Dunn & Crutcher. We represented Mr. Greebel below, and we represent Mr. Greebel in this appeal. This is an important issue of first impression in this circuit that's critical for all people with retirement accounts, and it's quite simple. Pursuant to the Federal Consumer Credit Protection Act, also known as the CCPA, the government cannot and should not be able to garnish more than 25 percent of retirement earnings. And this principle is important. It's not just important to Mr. Greebel, whose entire future safety net for him and his family is at stake, but more broadly to anyone who finds themselves subject to a civil or criminal judgment and the judgment creditor attempts to garnish their retirement earnings and leave them destitute, bankrupt, and a ward of the state. The CCPA's application to retirement accounts is at stake. Mr. Brodsky, what I want you to address is the actual language because I'm confused as to why we should conclude that even though Congress specifically used the term periodic payments, that they also wanted to exempt a lump sum payment. Why would they have put periodic payments? They could have just said it includes a pension or retirement program, period. Why would they put that in? Your Honor, I appreciate the question, and it's an excellent question. The definition of earnings has three clauses to it. As the Ashcraft case in the Eighth Circuit pointed out, there are three clauses. And as the Department of Labor interpreted, as the agency that has the authority to enforce this provision interpreted it. First of all, the Ashcraft case was a disability case, which is not mentioned at all, and it was periodic disability payments, right? It was, but Your Honor, there what they focused on was the first clause of earnings, which is compensation paid or payable for personal services. And then the rest of the two next clauses are examples of a non-exhaustive list, a partial list with catch-all language. Could there be any greater example of catch-all language that's a partial list where it says whether denominated as or otherwise, and then the following language which says and includes periodic payments pursuant to a pension or retirement program? There can't be any serious dispute that the money in Mr. Gribble's retirement accounts came from, was withdrawn from his salary both at Fried Frank and at Catton. And that was compensation paid for services. So can you talk to me about how we fold Kokoska into this? My reading of it is that the Supreme Court meant to protect the periodic compensation, or that the Supreme Court indicated that under the CCPA, the Congress meant to protect periodic payment and was not concerned about lump sum distribution. Thank you for asking that question, Your Honor. At page 647 and 648 of the Koska opinion, which is also discussed in the Ashcraft case, the court said specifically they were analyzing whether the tax refund was in the context of bankruptcy would be considered wages. And to quote the court at page 647, the quote, the income tax refund at issue in the present case does not relate conceptually to future wages, and it is not the equivalent of future wages for the purpose of giving the bankrupt a fresh start, end quote. The retirement funds at issue are completely opposite. Unlike a tax fund, they're deferred compensation entirely designed for the purpose of one day when someone's elderly and doesn't have the ability to earn the way they did in the past, they are able to defer their compensation to prevent them from being awarded the state. Well, I'm not so sure, because I mean, it seems to me that it's very, the retirement accounts do present a challenging line drawing exercise, but Congress seemed to feel like they wanted to protect things that people needed as opposed to investments, and because of the unique nature of retirement accounts, the way they decided to do that was to make that distinction between lump sum and periodic. Now, you may have made your line drawing in a different way because you felt like this might have been over-inclusive or under-inclusive, but help me understand why we are in a position to disturb the line drawing that Congress did in this account. Well, I think we go back to the basic principle of focusing on the plain language of what earnings, how they defined earnings, and the COSCA case quotes from the legislative history and relies on the legislative history. As the Ashcraft case pointed out in the Eighth Circuit, what COSCA missed was that, or didn't focus on in that case, because it didn't have to with respect to a tax refund, was that Congress was focused on earnings, and the test of earnings is compensation. The question is whether it's paid periodically or whether it sits someplace and it's not being drawn. Your position is that he wasn't entitled to take it, but if you're wrong on that, and he could have taken a draw on it, I mean, I don't understand how, I mean, his position, he's not in pay status, right? His position, your initial position, he is not in pay status, right? That's correct. And that he couldn't reach it, but if you're wrong about that, then you say because he might be able to take this, it's subject to the CCPA? Yes, Your Honor, because it would lead to absurd results otherwise. But he doesn't have to take it, does he? He doesn't have to take it. So why is it, why is it, in fact, we don't think he can take it. Why is it in any way measurable similar to the need for a 25 percent reduction? It sits outside, it's not, it doesn't even meet any of the concerns that Congress had about that kind of earnings. It's exactly the concern Congress had, because if it was a lump sum payment, which Congress doesn't have. 25 percent cap for it, so that, so that someone who's receiving a wage, whether the wage is partially commission, pension, or whatever, okay, that, that there'll be some money for that individual and their family to continue to exist. He doesn't, he doesn't need this money to exist right now. Well, I don't, first of all, he doesn't believe that he has the right to take it, or maybe he would have taken it. I understand that, but, but I find it curious that you think that if it could be addressed in the CCPA. Well, I think it would be expressly, if, if you were allowed to withdraw it on a periodic basis, then the express terms, which the example they used under earnings in the CCPA was periodic payments pursuant to a pension or retirement cost. I believe, being 72 years old, I now appreciate this, and having had been in private practice at one point in time of my life, and having one of these, I certainly appreciate exactly what pay status means now. But, but he's not, and so I don't understand how this then, and it's, I don't, I don't disagree with you. It's definitely earnings, I think it's definitely earnings, but, but that doesn't necessarily ensure that it's subject to the CCPA. Not all earnings are subject to the CCPA, are they? No, in the Department of Labor, for example, they said sort of buyback of shares aren't. There are other examples that aren't. If your firm, not your firm in particular, but if a firm in, if a firm had a $100,000 payment to a partner at the time of their retirement, is it subject to the CCPA? Yes, it is subject to the CCPA. In fact, any lump sum payment that constitutes compensation payable for services is subject to the CPA. So, so your measure is, is that the fact that it's periodic is irrelevant as long as it's earnings, is that it? That, that is correct. Under Ashcraft, under other cases, that's exactly correct, is it? When you say other cases, though, correct me if I'm wrong, the government cited, it is a matter of first impression here, but they cite the Park case in the Fifth Circuit, the Novak case in the Ninth Circuit, the Syed case in the Seventh Circuit, which relies on the Decay case in the Fifth Circuit, which I think go the other way. I don't think you're arguing those are distinguishable. You're arguing that all of those cases are just wrong. No, Your Honor, it is not, and I realize I'm out of time, but I would like to answer the question. The Fourth Circuit in Frank and the Seventh Circuit in Syed, you're correct, Your Honor, they relied on Kokeska's language in deciding that it had to be periodic. The Ashcraft case in the Eighth Circuit dealing with disability disagreed with that and explained why. What about Novak and what about Clark? Well, Clark didn't address the CCPA at all. That was whether an exemption based on other, quote, other income to be used for child support applies. It was different statutory language. The Decay case, the government is just incorrect in how they read it. There were two defendants there. The first defendant had argued the 25 percent cap applied. The Pro Se defendant, with a pension plan distributable in a lump sum, it's very clear on the Court of Appeals that the Court of Appeals did not hear and did not address whether or not the CCPA cap applied, and so the Court didn't address the issue. The Court did focus in Decay, and we cite it with authority, because they found that you have to focus on the statutory language, and they also quoted Congress. And Congress said that expressly incorporated Section 303 of the CCPA within the MVRA because they didn't want to lead judgment debtors to become wards of the state. Okay. The Fusil case, which the... Your time has passed. Okay, thank you, Your Honor. You have some rebuttal time. You can cover it then. Thank you, Your Honor. I appreciate it. We'll hear from the government. Mr. Price. Good morning, Your Honors. My name is Thomas Price. I'm an Assistant U.S. Attorney in the Eastern District of New York, and I represent the appellee, United States of America. A critical fact in this appeal is the fact that Mr. Griebel was convicted of committing conspiracy to commit wire fraud and conspiracy to commit securities fraud, and as a result of those convictions, he was sentenced in part to restitution of over 10 million dollars. The appellant argued that this case has an impact on both civil and criminal judgments going forward. That's simply incorrect. This case is based upon the Mandatory Victims Retirement Act, or MVRA, which only applies to criminal judgments, and that is a critical factor here. Well, but the MVRA says that you have whatever enforcement mechanisms are available under federal and state law, right? Yes, Your Honor. The MVRA entitles the government to enforce the judgment against all property or rights to property that the appellant possesses, notwithstanding any other federal law, with the only relevant exception being Section 303 of the Consumer Credit Protection Act. Now, additionally, this case obviously involves ERISA. So the best way to look at congressional intent is to look at those three cases and how they interact, or those three statutes. Specifically, the CCPA and the provision 1672A, which addresses earnings, was a protected plan such as the one you see here, didn't even exist. So retirement and pension plans, as envisioned in the CCPA, were plans that an employer or the government owned, that they controlled, and that the retiree who was entitled to it received payments. That was effectively it. In 1974, the government, Congress, passed ERISA. ERISA created a new type of plan that the individual had a property right in. Now, Congress wanted to protect that, so they passed, as part of that, the anti-alienation provisions within ERISA. Those provisions prohibited anyone, basically, from garnishing money from those accounts. And, in fact, as the United States Supreme Court found in Guidry v. Sheet Metal Workers, they refused to find an exemption even for government enforcement of criminal restitution. As this court noted in United States v. Irving, Congress apparently specifically reacted to that decision in Guidry in crafting the MVRA. The MVRA identifies several pension plans that are exempt. Yes, Your Honor, and as this court held in Irving, the MVRA um, overrides the anti-alienation provision of ERISA. Retirement and military service, a few others. Yes, there are other exceptions as well that aren't applicable here. But, so, when looked at together, the CCPA created protection for payment stream. ERISA created protections for the body, the corpus of a retirement account, for your typical investor. However, the MVRA exempted those for someone who has been convicted of a criminal account and who owes restitution or fine to the government. Therefore, the intent of Congress seems clear that by imposing the MVRA, they removed the protection for the corpus, but by specifically referencing 303 of the CCPA, they protected payment streams from those retirement accounts. Let me ask you, I have a specific concern about if you're successful in front of us with regard to the ability to reach the funds. You indicate that you don't, that on the question of the 10% penalty, Paul, are you prepared today to tell us that the government's position is that penalty will not be imposed? What I'm prepared to say, your honor, is that according to IRS guidance from tax court. Well, you're here from the government. I'm interested in what the United States government says today with regard to whether it intends to, one of its agencies, intends to impose the 10% penalty, should they, should the withdrawal, or should you be able to garnish his entire account? Your honor, I cannot state what the IRS will or won't do. All I can state is that decisions of both district courts and tax courts. If the IRS does do it, if you can't tell me, if the IRS does do that, then why is it that you should be allowed to garnish his entire account when he himself, if he withdrew the entire account and you stand in his shoes, could only receive 90% of it? Well, your honor, he could receive 100%. He would subsequently potentially have to pay 10% to the government. Well, sure, but wait a second. If you seize it, he doesn't get it, right? Am I right about that? Yes, your honor. So if you seize 100% of it, you're going to give him 10% when the penalty is imposed? No, your honor. Why not? This is taking more than you, than he could get. Well, your honor, this was. So you stand in his shoes? We do stand in his shoes, your honor. Then how is it, how is it that you're better off? We're not, your honor. The tax implications are separate from the garnishment, and this was addressed. Not to him, because if he takes the money out and handed it to you, he's going to have to pay 10% of it. So 10% of it comes out of his pocket. So you want him to pay 100% of his retirement, plus you want him to pay the 10% that the government turns around and says is a is that it? Your honor, according to the statute, yes, and according to cases. Well, maybe we should do it like the Seventh Circuit and authorize this to be turned to the district court and have the 10% paid into the district court if we agree with your position as to its ability to be reached, and for a determination as to whether the tax penalty is going to be imposed or not. Doesn't that put you in the position, the same position as he's in? Respectfully no, your honor. Why? Because again, the MVRA allows the government to garnish the property. You just told me you stood in his shoes. Do you retract that now, or are you still hold to that? That goes to his rights, to his rights to the property. We stand in his shoes. And here are his rights to 90% of it if he takes it out before 59 and a half. That's what you're entitled to. 90% if the tax penalty is imposed, am I right? Respectfully, your honor, no, that would not be the entitlement. The entitlement is to 100%. He's 100% vested in his account. You have an interesting concept of math when it's someone else's money. Your honor, according to the statutes and according to the case law that's addressed that specific issue, it's... Well, there's a disagreement in the cases about this, isn't there? Well, your honor, in fact... Is this a first impression here? In the Second Circuit, yes, your honor, it is. Okay, so we're not bound by any prior panel of Well, your honor, in O'Brien, this court allowed the government to garnish the entire court, the entire balance of two retirement accounts from... Which case? That was O'Brien. Yeah, but this issue wasn't raised in O'Brien. The CCPO was not raised, but the court allowed... And also, there was an issue regarding the 10% penalty was not raised in O'Brien either. Yes, your honor, in Syed, in Syed, in the Seventh Circuit and Frank in the Fourth Circuit, this issue was raised, and both courts said that the issue is the right that the appellant or the defendant has, and in this case, he has the right to the whole amount. You're saying those cases said that he specifically had to pay the 10% out of his money? Those cases are just an argument that the 10% penalty somehow prevented them... There were two different issues, whether the 10% makes it not a unilateral right. It could still be a unilateral right, but the question is, who takes the hit on the 10% penalty? Those cases don't address that, right? No, your honor, they don't. Tell me any case in the United States of America where, as a result of having to pay restitution, some type of penalty or tax or something like that is incurred, and the court has said that, even though the government is causing that penalty tax to be incurred, that that doesn't count. Which case says that? That the defendant has to take up that obligation, even though they're being forced to do this? Your honor, the government's not aware of any case that specifically says that. Just the district court cases and the tax cases cited in the brief that say that that penalty would not apply. So the logic of it is what? That because he had the right to get $100,000, say it was $100,000, even though he knows that he's going to pay $10,000, that the government has that right? Is that it? Yes, your honor. That's the logic of it? Yes, your honor. What's the harm to doing what Judge Leslie suggests, which is remanding back to the district court and saying, take the 10% out and hold it, and maybe there'll be litigation over this, but the government shouldn't take that money. We don't know what the government's position is going to be. How's the government prejudiced by that? If the court were to remand... You're saying you don't know. You don't know whether there's going to be a penalty or not, right? We cannot, I cannot say whether or not there will be. The IRS has said that they would not impose a penalty on the 10% penalty from Section 72T when that payment is being made pursuant to essentially a court order judgment or a plea deal or things along those lines. You think they're not going to impose the penalty, but you're not sure. The IRS has said that they would not impose the penalty. That's not a revenue ruling, though. That's an informal opinion, right? There are two district court cases that cite to the tax court cases, and then there are two tax court cases that are cited in the appellee brief as well, Your Honor. I just want to go back to what you said. I just want to address Mr. Brodsky's point about the peculiarity of this reading, and obviously I question him regarding the plain language. But if the idea was we don't want to disrupt some of the ability to pay their expenses by taking this, why wouldn't someone... Just because they take something out as a lump sum retirement doesn't mean they're not going to use it for household payments of things, right? Isn't that kind of strange? And in fact, I think in footnote one of your brief, you suggest if they started making payments periodically, the government's not taking the position that you can then take the corpus, right? That's correct, Your Honor. We aren't taking the position... Isn't that peculiar? I don't believe it's peculiar, but that is an issue that hasn't come up before any court as far as the government has been able to find. But again, to the first part of the question, I would just point to the history that Congress had here. Congress enacted the MVRA, allowing the government to override the anti-alienation provision of ERISA. Nothing in ERISA or the MVRA says that the government is restrained by taxes or... Even say a bonus, for example. A bonus is exempt. A bonus is extra income, similar to almost like a lump sum. It is a lump sum, but similar to a lump sum retirement. So they exempted that. They did specifically exempt bonuses. Bonuses tend to be periodic, so there is that issue as well. And in fact, two cases cited by appellant for the first time in their reply brief, United States v. Law and United States v. Armstrong, actually both stand for the proposition and state that Congress in enacting the CCPA was not concerned about specific sums or sources of money. It was concerned about the relationship between employers and employees. And the CCPA was passed with the intent of not giving the employer an incentive to terminate the employee, or the employee an incentive to quit their job in order to not have to pay. That's cases cited by the appellant. All right. Thank you, Mr. Price. Mr. Brodsky, you have two minutes and you can move on. Thank you, Larry. I'd like to make a few points, Your Honor. First, Mr. Green will not only have to pay the 10% tax, but there's also the tax on the ordinary gains. What do you mean the ordinary gains? Well, once the money is seized and distributed, then there will be gains from the time that the retirement funds are treated as ordinary gains. That's how they're treated by under tax. So there's the 10% tax penalty. Oh, because it would be considered a lump sum, you're saying? If it's considered a lump sum. As opposed to a periodic distribution. If it was periodically withdrawn over time, then you might fall within, it's an incentive not to withdraw periodically, because at the age of 59 or 62 when you withdraw, you would be taxed at a lower rate if you withdraw periodically. That's the way it's structured. But I think it's important to note with respect to tax, the Rousey Court, the Supreme Court in Rousey, a unanimous decision which held that a 10% statutory withdrawal penalty, quote, effectively prevents access to the entire balance, end quote, and does not give, quote, an unrestricted right to payment of the balance, end quote. Can you explain why you think Rousey's controlling here? It felt a little not on point. Well, in Rousey, they overturned the lower courts that held that the Rousey's had unlimited access, unlimited control to their IRA accounts. But why is a bankruptcy case impacting the NBRA language? Why is it controlling? I mean, we all read Rousey. What is the connection? The analogy, it's analogous. Because we're saying that I think the government's agreeing that Mr. Griebel needs unfettered, unilateral current right to withdraw the money. The unilateral is also something that's new, right? That you would be asking us to adopt, right? Well, I don't believe it's new. I think that's something that's recognized. The courts say that you need a unilateral right. If you don't have- But that's in the context of where a spouse had to approve the withdrawal. That's not the question here. That's why they said unilateral, because the question was, was it his choice alone or was it his choice and someone else's also? But that's not the issue here. Well, we respectfully submit- Can it graph the fact pattern of another to create a universal principle? I mean, the issue there was, did he have the right to take it out? And they said, no, because someone else had a right to intervene. And they said, so if it was him alone, then it would be his right. Well, he doesn't require anybody's approval here. Well, we respectfully submit the fiduciary has to approve under the Catton Plan and there's a 10% penalty withdrawal. But let me also address that the government started their position by saying somehow this court should carve out the CCPA under the NVRA and treat it, retirement funds, differently in the context of the NVRA and criminal defendants. That is the context of how their entire brief reads. They say honest debtors get the protection of the CCPA, but not dishonest debtors. That's a quote from their brief. And I think that's just absolutely wrong. And it's inconsistent with how the NVRA expressly said the CCPA applies. The government looks at this case very narrowly. But the reality is, a civil judgment creditor will be able to apply whatever rule this court adopts in interpreting earnings. With respect to retirement funds. All right, thank you. Thank you, Your Honor. Thank you both. We'll reserve decision. Have a good day.